·[Shenk *v.* Robeson.]

## Shenk *versus* Robeson.

1. Upon a note made by H. to the order of R., the indorsement of S., in blank, does not impose upon him the liabilities, either of indorser or guarantor, to the payee of the note.

ERROR to the Court of Common Pleas of *Lancaster county.*

This suit is brought on a note, dated October 1, 1856, drawn by Benjamin Hess, payable to Charles G. Robeson or order, for $450, payable at the Farmers Bank of Lancaster, with interest from date, and indorsed by ˙Christian Shenk.

The *narr.* simply charges a liability by Shenk, as indorser of the note to the payee, upon the default of the drawer, and notice of protest.    The defendant pleaded *non assumpsit.*

Upon the trial, Hiram Young, under objection from the defendant, testified as follows, after being shown the note in suit : " This note was given to me with the old one ; the old note was like their signatures, and the form same, as near as I

[Shenk *v.* Robeson.]

can recollect; the amount different; on that note Benjamin Hess was the drawer and Christian Shenk the indorser. Mr. Robeson gave me the old note and the new note, with instructions that I should call on Benjamin Hess; I went to Mr. Shenk with the note, and stated to Mr. Shenk that I had that note for payment, with instructions that I should have that renewed with his indorsement, before it became due on the 1st of October, or else have it thrown in the bank, so that it might be protested. Mr. Shenk looked at the papers, and said he would send Mr. Hess up to the store; he looked at the old, and I think at the new note also; I left then, and told him it would have to be attended to; he said he would see Mr. Hess, and send him up to the book store; Mr. Hess some time afterwards came to the book store; two or three weeks afterwards; he took the note in suit away, and brought it back again with Shenk as indorser; he gave me note in suit, and I returned him the other; I gave him the note, and put the other in safe; Robeson not present; lived in Berks county; it had not Robeson's name on it when I left him; Hess' name as drawer, and Shenk as indorser; Robeson's name not on. Mr. Shenk said that the matter would be fixed, (those are the words in substance,) and send Mr. Hess up; I don't think I could express what he said better than what I stated; I told Shenk, if the note was not renewed with the same indorser, it would have to be put in bank."

The court, LONG, J., charged the jury as follows: "The legal effect of this note, as it has been contended, in the absence of any other evidence, would be, that the defendant as indorser, would not be liable to the payee, the plaintiff in this case. The law holds in such a case, that the indorser would only be liable if it went into the hands of a stranger as holder; but if in a case of this kind, it is established by parol testimony, that the indorsement was intended as a guarantee or security for Hess, then the law would be different, and in a case of that kind, the indorser, Christian Shenk, would be liable. Now what is the evidence in this case? The whole matter turns upon the testimony of Hiram Young. Now, what are the deductions to be drawn from the testimony? The tenor of his testimony does not show positively, that the defendant agreed to assume any liability but what the law imposed upon him; but does the inference, which can be reasonably drawn from his testimony, show that Mr. Shenk agreed to become liable as guarantor or surety, thereby altering the rule of law, when it is not controlled by any extraneous circumstances. The substance of Mr. Young's testimony, appears to be, that Mr. Robeson, the plaintiff, held a note similar, or like the one now in suit, Benjamin Hess being the drawer, and Christian Shenk the indorser, and

[Shenk *v.* Robeson.]

the plaintiff the payee; the amount being for $400. Upon a note of that kind, Christian Shenk, as indorser, would not be liable to the payee, Charles G. Robeson, if not explained by other testimony. If there was any other testimony in regard to that note, does not appear. That note was not in dispute in this case. Mr. Young also further states, that he called upon Mr. Shenk, and told him that the note must be attended to, or that it would be placed in the bank for collection. Mr. Shenk replied, that it should be attended to, and that he would send Hess up to the store. Now, then, if what took place, (the remarks and conduct of Shenk,) satisfy you that the indorsement was to be considered as a guarantee, and that he was to be looked upon as a guarantor, he is liable. If, however, his remarks and conduct import, that he was to be liable merely as an indorser, according to the legal effect of ordinary indorsements, then your verdict should be in favor of defendant. I would also further say, that if this indorsement was made, to induce the payee to extend the time of payment, and 'that in such a case the indorser should be liable, the plaintiff should recover.''

The following are the errors assigned:

1. The court erred in admitting the evidence excepted to to prove a guarantee, under the pleadings in the case.

2. The court erred in their charge to the jury, in directing them that there was evidence, from which they might infer a contract of guarantee.

*Dickey*, for plaintiff in error.—The court admitted evidence to prove a verbal guarantee, by the indorser of the note in suit, to the payee, when the declaration alleged no such contract, but, on the contrary, treated the signature on the back of the note, as an indorsement; charging, that the indorser was liable to the payee upon the face of the note, and in the character of indorser. In this we suppose there was error. The contract of guarantee, and the liability of a guarantor, are entirely different from the contract and liability, created by the indorsement of a negotiable instrument, the contract differing in the nature of the liability of the party; as a consequence, the character of the remedy differs, not only in the *allegata*, but in the *probata*. So, also, the defences are entirely different.

The contract of guarantee is in its nature special, and not negotiable. 1 Parsons on Contracts, 492; *True* v. *Fuller*, 21 Pick. 140; *McDoal* v. *Yeomans*, 8 Watts, 361.

The contract of guarantee being special in its nature, must be declared on specially, stating fully the consideration, and the particular circumstances of the promise. 1 Chitty, Pl. 5th ed.,

102, 103, 293, 327; 2 Camp. 215; 1 Williams' Saunders, 211; Chitty on Bills, 250.

*Ellmaker*, for defendant in error.

The opinion of the court was delivered May 24, 1858, by

WOODWARD, J.—In *Barto* v. *Schmeck*, 4 Casey, 451, we classified the cases that have arisen upon such anomalous indorsements as the present, and laid down the rule of judgment, as clearly as we were capable of expressing it. Applying that rule to this case, the judgment must be reversed, for there was no count on the special undertaking of the defendant, and no evidence to sustain it, if such count had been pleaded. The court ruled that the defendant was not liable, in virtue of his indorsement merely, but permitted the jury to infer a collateral contract of guaranty, from evidence which we think was entirely incompetent to justify such an inference. The witness, Young, describes his interview with Shenk, but proves no declarations or promises, on the part of Shenk, which can bind him in this action. The note was indorsed to renew a former one of like tenor, but Shenk was no more liable on the first note, *by reason of his indorsement*, than he was on the second; and neither of the indorsements were accompanied with acts or declarations, from which a guaranty could be implied. In *Schellenberger* v. *Neff*, the transaction imputed an engagement to guarantee a loan. Here there was nothing of the sort. The case rested altogether on the indorsement of the defendant, and as that did not bind him to the payee, the verdict and judgment should have been in his favor.

The judgment is reversed and a *venire facias de novo* awarded.