# Siegel & Co. *v.* Baily, Appellant.

*Contracts—Construction — Suretyship — Offer — Acceptance — Notice.*

1. A guaranty of a contract implies that it was a concurrent act and part of the original agreement. Where a guaranty of a lease bears even date therewith and is attached thereto, it will be presumed to have been accepted by the landlord when the lease was executed, and, in an action thereon, the jury is properly instructed that no further notice on the part of the landlord, of his acceptance of the guaranty, is necessary to fix the surety's liability.

*Landlord and tenant—Distraint—Release of goods—Execution on fi. fa.—Bankruptcy of lessee—Partial payment.*

2. After a landlord has distrained for the rent of a hotel property, it is not an eviction if the landlord agrees with the lessee's wife in the lessee's presence, and with his acquiescence, that the wife should continue to conduct the hotel for a limited period.

3. In an action against the surety on a lease, it appeared that plaintiff had proceeded against the property of a tenant under a fi. fa. and had thereafter upon a claim of property by the tenant's wife released the goods and seized them under a landlord's warrant, and that subsequently the lessee had been declared a bankrupt and that the property levied on had been seized by the Federal Court; defendant contended that it was discharged from liability by the release of the goods from the lien of the fi. fa. and also sought to set off against plaintiff's claim the value of the goods which had been seized under the order of the Federal Court in the bankruptcy proceedings. The lower court decided that the release of the goods from the fi. fa. and the levying of them under the landlord's warrant was beneficial to the surety and did not discharge him from liability, and that the taking of the property by the Federal Court was a valid defense to defendant's claim of set off, and allowed defendant credit for nothing more than the actual amount received by plaintiff from the trustee in bankruptcy. *Held,* no error.

Argued October 26, 1915. Appeal, No. 163, Oct. T., 1915, by defendants, from judgment of C. P. Allegheny Co., July T., 1913, No. 905, on verdict for plaintiff, in case of Simon Siegel, L. Samuel Siegel and Max Feder-

man, doing business as Siegel & Company, v. Ella C. Baily and Ellis B. Baily, Administrators of the Estate of W. H. Baily, deceased.   Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ.   Affirmed.

Assumpsit on contract of suretyship.   Before SHAFER, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $5,123.04 and judgment thereon.   Defendants appealed.

*Errors assigned* were various rulings of the trial judge and the refusal of defendant's motion for judgment n. o. v.

*John C. Bane,* for appellants.

*Rody P. Marshall,* with him *J. M. Patterson,* for appellee.

OPINION BY MR. JUSTICE FRAZER, January 3, 1916:

Plaintiffs leased to G. W. Gwynne a hotel property located in the Borough of Washington for a term of eight years from January 1, 1908, the lease having annexed thereto the following writing: "I, W. H. Baily, do hereby for myself, my heirs and assigns, agree and covenant to become responsible to Siegel & Company, lessors named in the foregoing agreement, their successors and assigns, for the faithful performance on the part of G. W. Gwynne, lessee named in said agreement, of all the conditions, covenants or provisions contained therein on the part of the said G. W. Gwynne, his heirs and assigns, to keep and perform, and I do further hereby, for myself, my heirs and assigns, agree and covenant to and with the said Siegel & Company, their successors and assigns, to indemnify and protect the said Siegel & Company against any and all loss or damage which it,

the said Siegel & Company, its successors and assigns, may for any reason sustain on account of the said G. W. Gwynne, his heirs and assigns, failing in any way or manner to keep and perform any of the conditions, covenants or provisions contained in said agreement. In witness whereof I have hereunto set my hand and seal this 27th day of December, A. D. 1907."

The foregoing agreement bears even date with the lease and was, so far as the record shows, presumably executed on the same day and contemporaneously with the lease itself. No notice of acceptance was given by plaintiffs to W. H. Baily previous to his death, which occurred July 18, 1908, six and one-half months after the date of the lease, whereupon letters of administration upon his estate were granted to defendants. The tenants subsequently defaulted in payment of rent and on November 8, 1911, plaintiffs entered judgment in the Court of Common Pleas of Washington County on the confession contained in the lease for the rent unpaid to that date and issued a fi. fa. thereon under which the sheriff levied on the furniture and other property contained in the hotel. On December 29, 1911, this writ was stayed and the same property immediately levied upon under a landlord's warrant, issued by plaintiffs. The substituting of the latter writ for the former was made necessary by the tenant's wife claiming ownership in a part of the property levied upon which could not therefore be sold under the fi. fa. but was liable to distraint under a landlord's warrant. January 8, 1912, ten days after the latter levy was made, Gwynne, the tenant, was adjudged a bankrupt on his own petition and an order thereupon issued by the United States District Court restraining further proceeding against his property, including the furniture and other goods distrained by plaintiffs.

On February 8, 1911, plaintiffs advised Baily's administrators by letter of default by the tenant in payment of rent under the lease above referred to, and calling their attention to the fact that Baily had become

"guarantor for the payment of certain money that would become due" under the agreement. This was followed by a similar letter dated September 7, 1911. No payment was made by the administrators; plaintiffs, however, credited on account of rent the proceeds of the various proceedings including the money subsequently received from Gwynne's trustee in bankruptcy. On May 10, 1913, this action was begun to recover the balance of rent due to that date. The trial resulted in a verdict for plaintiffs and motions for a new trial and for judgment non obstante veredicto were subsequently overruled.

The first question raised by the assignments of error is whether the trial judge was correct in charging the jury that notice of acceptance of Baily's offer of guaranty was unnecessary for the reason as stated in his opinion discharging the rules for a new trial and for judgment non obstante veredicto that the execution of the alleged guaranty was contemporaneous with the lease and is presumed to have been delivered with it.

Defendant's contention is that the contract of Baily was a technical guaranty as distinguished from a suretyship and the words "to become responsible" indicate the lease had not been executed and delivered when the guaranty was signed and that the guaranty was a mere offer of future responsibility, which did not become binding upon the guarantor until notice of acceptance was given by plaintiffs. These words are susceptible of another construction, namely: that the future tense was used for the reason they referred to a liability which might arise thereafter should the lessee make default and under this view the words are not inconsistent with a present completed contract. The contract also refers to the "foregoing agreement" and in the second paragraph agrees to indemnify plaintiffs against loss by reason of the tenant's failure to keep or perform any of its conditions or covenants. The guaranty was attached to and formed part of the principal agreement and bore

the same date. The rule therefore applies that a guaranty of a contract implies, ex vi termini, that it was a concurrent act and part of the original agreement: Woods v. Sherman, 71 Pa. 100. This is not a case of an offer made by letter, or other separate writing, to become responsible for a future credit to be given a third person where the general rule is that notice of the acceptance of the guaranty or that the offer had been acted upon must be given as in Gardner v. Lloyd, 110 Pa. 278, but is a case of an absolute guaranty accepted when given. Nothing remained to be done in this case following the execution and delivery of the writing. In other words, the offer of W. H. Baily was accepted when made, the transaction being contemporaneous with the principal agreement and no further notice was required. The court below was correct in its conclusion that whether it be viewed as a guaranty or suretyship, the transaction was a single one and the undertaking of the surety was a part of the original lease, and an inducement to its execution, and no further notice on the part of the landlord was necessary to fix liability on the surety.

It is also argued by defendants, that the action of plaintiffs in placing Mrs. Gwynne in charge of the property at the time the levy was made under the landlord's warrant, amounted in law to an eviction of the lessee and consequent suspension of the rent. After the levy was made, one of plaintiffs had an interview with Mrs. Gwynne, the tenant's wife, and suggested she remain in the hotel and conduct it for two weeks without rent, and retain, as her compensation, the profits realized in the business during that time. During her husband's tenancy under the lease in question she assisted him in the management of the house and during this time he continued on the premises performing the same duties as before the distraint was made. At the end of that time it was again arranged that Mrs. Gwynne continue in charge for an additional period of two weeks. Her husband was present at the first interview and testified there

was talk of employing a watchman to remain on the premises and look after and protect the furniture and equipment of the hotel which, at that time, were in legal possession of the landlord under his levy and this agreement was made with Mrs. Gwynne as a substitute for placing the property under the care of a third person or removing it from the premises for safe keeping, which the landlord had a right to do until a sale under his distraint. The arrangement was in fact beneficial to the tenant in that he was thus permitted to use the furniture in the operation of the hotel without interruption. He was present and acquiesced in the arrangement, consequently the transaction did not constitute an eviction.

Defendants claim to be entitled to credit for the value of the goods levied upon under the fi. fa. and afterwards voluntarily released from the lien of the levy at the time the landlord's warrant was issued. It is true, if plaintiffs had, by their acts, released the goods and permitted them to be wholly lost, such voluntary act on their part would amount to a release of the surety. In this case, however, there was no release; the goods held under the fi. fa. were immediately seized under the landlord's warrant which was a more effectual remedy, as it increased the fund to the extent of the value of the goods, which, under the fi. fa., were claimed by the tenant's wife. Instead of being damaged defendants were benefited by substituting the landlord's warrant for the fi. fa. It is contended also, that had the fi. fa. remained in force and been proceeded with, a sale of the property would have been had before the bankruptcy proceedings were commenced. This contention assumes, without substantial · basis, that the tenant would not have begun such proceedings earlier, if there had been an earlier sale or offer to sell, under the fi. fa. The beginning of the voluntary bankruptcy proceeding by the tenant was not a matter which plaintiffs were bound to foresee or for which they should be held responsible; the taking of the property under the order of the Federal Court consequently was

a valid defense by the plaintiffs in an attempt by defendants to set off their value. The charge of the court on this question was a correct statement of the legal effect of the transaction and the facts were properly submitted to the jury.

Under the above view of the case, defendants were entitled to a credit for the actual amount received by plaintiffs from the trustee in bankruptcy and no more. It is therefore unnecessary to discuss the question of competency of the evidence of value of the goods sold by him.

The judgment is affirmed.